**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GANDER MOUNTAIN COMPANY,**

                                        **Plaintiff,**

         **vs.**                                              **3:12-CV-0800**
                                                            **(MAD/DEP)**

**ISLIP U-SLIP LLC,**

                                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

POPE & SCHRADER, LLP                    Alan J. Pope, Esq.
2 Court Street, 2nd Floor
Binghamton, New York 13902
_Attorneys for Plaintiff_

THOMPSON COBURN LLP                     Dudley W. Von Holt, Esq.
One US Bank Plaza, Suite 2700           Paul T. Sonderegger, Esq.
St. Louis, Missouri 63101
_Attorneys for Plaintiff_

HINMAN, HOWARD & KATTELL, LLP           Dawn J. Lanouette, Esq.
80 Exchange Street                      Jeanette N. Simone, Esq.
P.O. Box 5250
Binghamton, New York 13902-5250
_Attorneys for Defendant_

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

         Plaintiff Gander Mountain Company ("plaintiff" or "Gander Mountain") commenced the

within action seeking monetary damages, declaratory judgment and injunctive relief against

defendant Islip U-slip LLC ("defendant").  Presently before the Court is defendant's motion to

dismiss plaintiff's complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(7).

(Dkt. No. 14).  Plaintiff has opposed defendant's motion.  (Dkt. No. 19).

**BACKGROUND**[1]

Plaintiff operates a national retail network for stores for hunting, fishing, camping, marine products and accessories.  In or around January 2004, plaintiff and Pathmark Stores, Inc. ("Pathmark") began negotiating a lease for the premises ("Premises") located at 528 Harry L. Drive, Johnson City, New York.  The premises included a building consisting of approximately 47,500 square feet.   The purpose of the lease ("Lease") was for the operation of a Gander Mountain retail store.

The Premises is in a location that is directly adjacent to Finch Hollow Creek, which is a tributary of the Susquehanna River.  Finch Hollow Creek discharges into Little Choconut Creek which then discharges into the Susquehanna River.  The Premises lie between Finch Hollow Creek (south) and Harry L. Drive (north).  From 1986 through 2000, the area in and around Johnson City, New York experienced at least four severe flood events.  In March 1986 and April 1993, the Susquehanna River, Little Choconut Creek and Finch Hollow Creek flooded the Premises.  In January 1996, the Susquehanna River, Little Choconut Creek and Finch Hollow Creek flooded adjacent properties including the Premises.  A significant portion of Harry L. Drive, the only means of ingress and egress from the Premises, was closed due to the January 1996 flood.  In February 2000, the river and creeks again flooded the Premises.

From January 15, 2004 through April 15, 2004, plaintiff conducted its due diligence with respect to the Premises.  During that time, plaintiff hired Certified Environment Services ("CES") to perform an Environmental Site Assessment.  Part of the task of performing the assessment was to gather historical information on the Premises, including past use, zoning designation, flood plain designation and events of past flooding.  On or around February 19, 2004, Pathmark

---

[1] The background information is taken from plaintiff's complaint and is presumed true for the purposes of this motion.  These are not findings of fact by the Court.

reported that it did not possess any environmental reports for the Premises.  On or about March 1, 2004, CES produced a map indicating that the Premises was located within a 500 year flood plain. CES sent Pathmark's Director of Real Estate a questionnaire which was to be completed before the Environmental Site Assessment was issued.  On or about March 31, 2004, CES advised plaintiff that it had contacted Pathmark's Director of Real Estate on three occasions but that Pathmark was unresponsive.  During the due diligence period, Pathmark failed to produce any information related to past flood events at the Premises.  On or about April 9, 2004, CES sent it's Environmental Assessment to plaintiff without any additional information from Pathmark.

On April 16, 2004, plaintiff and Pathmark entered into the Lease whereby plaintiff agreed to lease the premises.[2]   The initial term of the lease was fifteen (15) years.  Section 12.2 of the Lease provides:

Tenant's Property Insurance

Tenant shall, commencing on the Commencement Date and continuing during the Lease terms, keep in full force and effect an all risk policy of insurance insuring (a) at least eighty percent (80%) of their full replacement value Tenant's merchandise, trade fixtures, furnishings, equipment and all other items of personal property of Tenant located on or within the Premises; and (b) to its full replacement value, all buildings and improvements on the Premises. Such insurance may be furnished by Tenant under any blanket policy carried by it, under a separate policy therefore or through Tenant's self-insurance.  Upon request by Landlord, Tenant shall provide to Landlord a certificate of insurance naming Landlord an any fee mortgagee as additional insureds and providing that the applicable insurance may not be canceled without at least thirty (3) days written notice to Landlord.

On or about August 18, 2004, plaintiff began operating its retail store.  In June 2006, the Susquehanna River caused massive flooding in Johnson City, New York, cresting at 33.66 feet.

---

[2] The lease is annexed to the Complaint.

3

As a result, Little Choconut Creek and Finch Hollow Creek flooded the Premises. During June 2006, plaintiff's store on the Premises was filled with three to six feet of water which caused a complete loss of inventory. After the event, plaintiff's store on the Premises was closed for 92 days while a large construction and remodeling project was undertaken to restore the property for use as an operable commercial retail building.

On July 8, 2010, defendant purchased the Premises from Pathmark.[3]

In September 2011, Tropical Storm Lee struck the region with heavy rains. The Susquehanna River crested at 33.66 feet and caused Little Choconut Creek and Finch Hollow Creek to flood the Premises. The Premises had to be evacuated and the flooded region was declared a major disaster area. Plaintiff's store on the Premises was filled with five to eight feet of water which caused a complete loss of inventory.

From October 2011 until April 2012, plaintiff attempted to obtain insurance for an operating store that is necessary to continue business in Johnson City to satisfy Section 12.2 of the Lease. Plaintiff was unable to obtain insurance under an all-risk property insurance policy due to the previous history of flooding at the Premises. Plaintiff discontinued operations at the Premises.        On May 15, 2012, plaintiff filed a complaint in the within action. On July 16, 2012, defendant filed a motion to dismiss on the following grounds: (1) plaintiff waived all claims against defendant based upon the Certificate of Estoppel; (2) the complaint fails to state a valid claim for frustration of purpose; (3) plaintiff's claims are barred by the applicable statute of limitations; (4) there is no fiduciary duty between a landlord and tenant; (5) the negligence claims are duplicative of the breach of contract claims; and (6) plaintiff failed to name an indispensable

---

[3] Defendant asserts that it purchased the premises from Pathmark's successor, The Great Atlantic and Pacific Tea Company, which acquired Pathmark on December 3, 2007.

party.   Plaintiff opposes defendant's motion and asserts that defendant improperly relies upon

documents that are beyond the "four corners" of plaintiff's complaint.

## DISCUSSION

## I.    STANDARD ON A MOTION TO DISMISS UNDER 12(B)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief and pleadings

without considering the substantive merits of the case.  *Global Network Commc'ns v. City of New

York*, 458 F. 3d 150, 155 (2d Cir. 2006); *Patane v. Clark*, 508 F. 3d 106, 111–12 (2d Cir. 2007).

In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the

pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v.

Shaar Fund, Ltd.*, 493 F. 3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth,

however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citation omitted).   "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is

limited to consideration of the complaint itself" unless all parties are given a reasonable

opportunity to submit extrinsic evidence.  *Faulkner v. Beer*, 463 F. 3d 130, 134 (2d Cir. 2006).  In

ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine

itself to the four corners of the complaint and look only to the allegations contained therein.

*Robinson v. Town of Kent, N.Y.*, No. 11 Civ. 2875, 2012 WL 3024766, at *3-4 (S.D.N.Y. 2012)

(citing *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," *see* Fed. R. Civ. P. 8(a) (2), with sufficient facts "to 'sho[w] that the pleader is entitled to

relief[.]'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this

standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the

speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on

[their] face." *Id*. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but

it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement

to relief. '" *Id*. (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a

complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at

558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to

plausible, the [ ] complaint must be dismissed[.]"  *Id*. at 570.

The Second Circuit has held that, on a motion to dismiss, a court may consider

"documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters

of which judicial notice may be taken, or  . . . documents either in plaintiffs' possession or of

which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech. Inc*., 987

F.2d 142, 150 (2d Cir.1993). The Second Circuit has clarified, however, that "[b]ecause this

standard has been misinterpreted on occasion, we reiterate . . . that a plaintiff's reliance on the

terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's

consideration of the document on a dismissal motion; mere notice or possession is not enough."

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (citation and footnote omitted).[4]

## II.    ESTOPPEL

---

[4] At this early juncture, the Court declines to convert this motion to dismiss to one for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. *See, e.g., Global Network Commc'ns, Inc*., 458 F.3d 150, 155 (2d Cir. 2006) (holding that "[t]he conversion requirement of Rule 12(b) ... deters trial courts from engaging in factfinding when ruling on a motion to dismiss and ensures that when a trial judge considers evidence [outside] the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it" (citations omitted)).

Defendant moves to dismiss plaintiff's entire complaint arguing that plaintiff waived and/or is equitably estopped from asserting claims against Islip based upon the Tenant Estoppel executed on July 7, 2010. Defendant claims that, "based upon the clear language of the Estoppel Certificate, Gander Mountain has agreed that it will not assert the claims against Islip".

On a Rule 12(b)(6) motion, the Court may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 2012 WL 1038804, at *4 (E.D.N.Y. 2012). "The plaintiff's failure to include matters, of which as pleaders, they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991).

In this matter, plaintiff argues that the Court should not consider the document within the context of the 12(b)(6) motion. The certificate/document was not attached or referenced in plaintiff's complaint but is annexed to defendant's motion papers. The document is signed by plaintiff and provides:

> Pathmark Stores, Inc. ("Landlord") has notified Gander Mountain Company ("Tenant") that it is under contract to sell the Premises to Islip U-Slip LLC ("Purchaser") and this certificate will be delivered to Purchaser in connection with such sale. Tenant hereby states and declares that, as of the date hereof and based on the current actual

> knowledge and information of Tenant's officers and directors, as follows: [ . . . ]

Plaintiff does not deny knowledge and/or possession of the document.  However, plaintiff argues that even if the court accepts the document as part of the record, the certificate does not bar the claims asserted herein as it was "based upon facts now known".  The Court agrees.  The Second Circuit has explained that, "[t]he general purpose of an estoppel certificate is to assure one or both parties to an agreement that there are no facts known to one and not the other that might affect the desirability of entering into the agreement and to prevent the assertion of different facts at a later date." *Bank of New York Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc*., 2011 WL 2610661, at *6 (S.D.N.Y. 2011) (citing *ReliaStar Life Ins. Co. of New York v. Home Depot U.S.A., Inc*., 570 F.3d 513 (2d Cir. 2009)).  At this juncture, there are material, factual issues surrounding the document that preclude dismissal and cannot be resolved at the early stages of this litigation.   Accordingly, defendant's motion to dismiss plaintiff's complaint based upon the Tenant Estoppel/Certificate of Estoppel is denied.

In the alternative, defendant moves to dismiss plaintiff's individual causes of action based upon additional theories which the Court will discuss these requests/causes of action seriatim.

## III.    FRUSTRATION OF PURPOSE

In Count I of the complaint, plaintiff seeks a declaratory judgment against defendant and a finding that, due to the September 2011 flood event and plaintiff's inability to procure insurance to conduct its ongoing business operations on the Premises, the Lease is hereby terminated. Defendant argues that the inability to obtain an all risk insurance policy cannot frustrate the lease or render plaintiff's performance impossible.

The Restatement of Contracts (Second) § 265 (1981) provides:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

Comment (a) of § 265 sets forth that three criteria must be met before courts will find frustration of purpose:

> First, the purpose that is frustrated must have been a principal purpose of that party in making the contract. The object must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense. Second, the frustration must be substantial. It is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss. The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract. Third, the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made.

The doctrine of frustration of purpose is "a narrow one which does not apply unless the frustration is substantial". *Crown It Services v. Koval–Olsen*, 11 AD3d 263 (1st Dep't 2004). "Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary". Restatement 2d of Contracts § 261.

Under New York law, the doctrine of frustration of purpose discharges a party's duties to perform under a contract where "an unforeseen event has occurred, which, in the context of the entire transaction, destroys the underlying reasons for performing the contract, even though performance is possible." *Sage Realty Corp. v. Jugobanka, D.D.*, 1997 WL 370786, at *1-2 (S.D.N.Y. 1997) (citations omitted). "Frustration of purpose excuses performance when a 'virtually cataclysmic, wholly unforeseeable event renders the contract valueless to one party' ".

*U.S. v. Gen. Douglas MacArthur Senior Vill.*, 508 F.2d 377, 381 (2d Cir. 1974).  It is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss.  *Rockland Dev. Assoc. v. Richlou Auto Body, Inc*., 173 A.D.2d 690, 691 (2d Dep't 1991). "[W]here impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused." *Bank of New York v. Tri Polyta Fin. B.V.*  2003 WL 1960587, at *4 (S.D.N.Y. 2003) (citations omitted).

 The relevant inquiry is, "whether the party seeking to avoid liability could have anticipated the frustrating event and guarded against it".  *Sage,* 1998 WL 702272, at *4, n. 4. Commercial frustration applies only where the parties could not have provided for the frustrating event through contractual safeguards.  *Id.* (citation omitted).  "[I]f a party could reasonably foresee an event that would destroy the purpose of the contract, and did not provide for the event's occurrence, then that party will be deemed to have assumed the risk."  *Id.*  If a contingency is reasonably foreseeable and the agreement nonetheless fails to provide protection in the event of its occurrence, the defense of commercial frustration is not available.  *Id.* at *3 (citations omitted).

 In a case with similar facts and an analogous lease provision, the district court refused to relieve plaintiff from its obligation under the lease because the parties contemplated the contingency and allocated the risk between the parties.  *See Portnoy v. Omnicare Pharm., Inc.*, 2004 WL 1535780, at *3 (E.D. Pa. 2004).   In *Portnoy,* the defendant/tenant entered into a fifteen year lease with the plaintiff/landlord for a two-story commercial property.  In 2001, due to Tropical Storm Allison, the defendant sustained severe flood damage and ceased operations.  *Id.* Pursuant to the lease, the defendant repaired portions of the exterior and the plaintiff repaired the

interior of the building.  *Id*.  In Mid-2002, the defendant informed the plaintiff that it was vacating the building.   As a result, the plaintiff commenced an action and the defendant asserted several affirmative defenses including frustration of purpose.  *Id*. at *2.  The defendant argued that the unforeseeable circumstances frustrated the purpose of the lease.  Specifically, the defendant claimed that based upon the lease, the parties intended the property to be used for manufacturing, testing, analyzing, packing and the distribution of pharmaceutics and due to the history of flooding and strict FDA standards, the defendant could not longer operate.  *Portnoy*, 2004 WL 1535780 at *2.  On the parties' motions for summary judgment, the Court concluded that the lease was a detailed contract between two sophisticated parties in which the allocation for risk of casualty is distributed between the parties.  *Id*. at *3.  The lease included a provision for "Damage or Casualty" that mirrors the provision at issue herein.  The Court held, "[t]he parties' agreement contemplated the event of a casualty.  This court has to enforce the parties' agreement absent extreme circumstances.  These facts do not amount to circumstances that warrant the application of frustration of purpose".  *Id*.

In another case with strikingly similar facts, the District Court of Appeals of Florida held that the tenant failed to establish a *prima facie* defense of commercial frustration.  *Home Design Ctr-Joint Venture v. County Appliances of Naples, Inc*., 563 So.2d 767 (1990).  In the *Home Design* case, the defendant entered into a five-year lease with the plaintiff for a 3200 square foot space in January 1986.  As a condition of the lease, the defendant agreed to procure and maintain liability insurance.  *Id.* at 768.  In October 1987, the insurance company declined to renew its policy.  While the defendant was able to obtain insurance from Nationwide, the policy was canceled a few months later when Nationwide inspected the area.  *Id.*  The defendant began to

look for replacement coverage however, the record did not contain any documents concerning the

efforts after April 1988. *Id.* at 769.

The Court held that:

> The future availability of contractually required insurance at a
> reasonable price is clearly a business risk. The parties could have
> shifted the risk of expensive or unavailable insurance for either the
> liability coverage or the property coverage from the tenant to the
> landlord. They chose not to shift this risk by the terms of the contract.
> Thus, the issue in this case is whether the tenant is entitled to shift
> these risks to the landlord under principles of law which would
> override the allocation of risks in the parties' contract.

*Home Design*, at 769.

Noting that the doctrines of "impossibility of performance and commercial frustration" are

"undoubtedly in [the] process of evolution and have been applied with "increasing liberality", the

Court warned that the doctrines, "should be employed with great caution if the relevant business

risk was foreseeable at the inception of the agreement and could have been the subject of an

express contractual agreement." *Id.* With respect to frustration of purpose, the Court held:

> Even under theories which permit a broader application of the doctrine
> of commercial frustration, the defense is not available concerning
> difficulties which could reasonably have been foreseen by the
> promisor at the creation of the contract. Although County Appliances
> may not have anticipated future problems with its insurance company
> or with its floor plan financier, it did not present substantial competent
> evidence to establish that such basic business risks were matters which
> it could not have foreseen at the time it negotiated the terms of this
> lease.

*Id.* at 770 (internal citations omitted).

The Court noted that the defendant failed to present any precedent, "in which a tenant was

permitted to escape its obligations under a lease because of difficulties obtaining insurance." *Id.*

Here, plaintiff claims:

From in or around October 2011 through April 2012, Gander Mountain attempted to obtain insurance for an operating store that is necessary to continue business in Johnson City, New York and which satisfies the requirements set forth in Paragraph 12.2. of the Lease.

The term of Gander Mountain's 2011-2012 all-risk property insurance policy issued by Affiliated FM Insurance Company ended on May 1, 2012.

In or around that time, Gander Mountain's insurance broker, Aon Risk Services Central, Inc., informed Gander Mountain, that after diligently pursuing insurance for an operable store at the Premises, no insurance company was willing to offer such insurance. The insurance broker confirmed that the Building's contents and inventory cannot be insured under an all-risk property insurance policy due to the previous history of flooding at the Premises. Accordingly, there are no other options available to Gander Mountain to operate an ongoing business concern on the Premises.

Pltf. Cmplt. at ¶45-47.

Plaintiff is a sophisticated business entity with knowledge of the real estate industry and clearly experienced in entering into written agreements of this nature. Plaintiff and Pathmark entered into a lease agreement that allocated their risks with respect to damage to the property.

Section 15 of the Lease is entitled Damage, Destruction and Restoration and provides:

15.1    Repair and Restoration

If the premises (including, without limitation, the Building) shall be damaged or destroyed in whole or in part by fire or other casualty during the Lease term, Tenant shall promptly repair and restore the Premises to a condition equal to its condition immediately prior to such damage or destruction and in conformity with and pursuant to all applicable requirements of law and duly constituted governmental authority.

The subject event, flooding, was clearly foreseeable. The complaint contains factual averments pertaining to four floods from 1986 until 2000. Moreover, during the period of due diligence, plaintiff retained CES to perform an environmental evaluation with regard to flood issues. Based upon plaintiff's own admissions, it was aware of the flood risks associated with the

property prior to executing the Lease.  Plaintiff alleges that Pathmark failed to disclose "flood

and/or related sewer back-ups in April 1993, and January 1996, or possibly in March 1986 and

February 2000 as well".  Assuming all of the allegations in the complaint to be true, plaintiff now

seeks to have this court terminate the Lease even though plaintiff acquiesced in signing the lease

despite Pathmark's failure to cooperate with CES.  Because plaintiff was aware of the possibility

of flood, plaintiff could not have assumed that all-risk insurance would be available.  *See Twin*

*Holdings of Delaware LLC v. CW Capital, LLC,* 2010 WL 309022, at *6 (N.Y.Sup. 2010) (the

plaintiffs were certainly aware of the possibility of volatility in the financial markets and could

not have assumed that banks would not become unwilling to extend credit).  Plaintiff has failed to

allege that it was unable to negotiate terms that would protect plaintiff from any flood occurrence.

While it may be financially difficult or unprofitable for plaintiff to continue to operate their retail

store, that does not excuse plaintiff's obligation to perform under the terms of the Lease.

   Plaintiff argues that the unforeseeable event was the insurers' refusal to issue an all-risk

policy for the site.  The complaint and caselaw do not support plaintiff's assertions.  The Court

has reviewed the case cited by plaintiff in support of this cause of action. *See In re Agosta*, 122

Misc.2d 1091 (N.Y. Sup. 1983).  The Court is not persuaded by the lower court holding in that

case as the facts are inapposite to those at hand.[5]

   In support of the motion, defendant cites to *Kel Kim Corp. v. Cent. Mkts. Inc.,* 133

Misc.2d 529 (N.Y. Sup. 1986).  Plaintiff argues that *Kel Kim* does not apply because the decision

was "based upon the doctrine of impossibility of performance" not frustration of purpose.  *See*

Dkt. No. 19, p. 8.  While plaintiff properly notes this distinction, the underlying principle of both

doctrines is foreseeability.  "Impossibility and frustration of purpose refer to two distinct

---

[5] The parties disagree on whether the holding of *In Re Agosta* is a correct statement of law.  This Court takes
no position on that issue.

doctrines in contract law, but both require unforeseeability." *Beardslee v. Inflection Energy,*

*LLC*, 2012 WL 5522912, at *6-7  (N.D.N.Y. 2012).  In *Kel Kim*, the Appellate Division noted:

> As to the "unanticipated, unforeseeable risk" element of the doctrine,
> given the caprices over the years of the liability insurance industry, the
> austere reality is that inability to obtain liability insurance, for the
> duration of a lease having an outside limit of 20 years which is
> dependent upon the cooperation of third parties, was, we think,
> foreseeable and should have been guarded against in the contract. In
> any event, the risk that the coverage might not be obtained should not
> be borne by the landlord but by the lessee who agreed to obtain it.

*Kel Kim Corp.*, 131 A.D.2d at 949.

Here, plaintiff is seeking to excuse it's performance from the Lease entirely and terminate

the Lease.  *Cf. Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins.* Co.  588

F.Supp.2d 919, 932 -933 (S.D.Ind. 2008) ("[u]nlike the defendants in the *Bank of New York* or

*Kel Kim* cases, Hoosier Energy does not ask John Hancock to excuse its performance for an

uncertain or unlimited period of time." [. . . ] "John Hancock contends that it was not obligated to

grant Hoosier Energy unlimited extensions. Unlimited extensions, no. But reasonable extensions,

in a time of economic crisis and under the doctrine of temporary commercial impracticability,

yes").  Plaintiff has not cited to any caselaw to support it's position.  Moreover, the Court has

conducted it's own research and can find no support for the claims asserted in Count I.

Given these circumstances, plaintiff's cause of action for frustration of purpose is

dismissed. *See In re Merrill Lynch Auction Rate Sec. Litig.,* 2010 WL 1924719, at *9 (S.D.N.Y.

2010) (holding that while LSED may have viewed as remote the possibility that FGIC would lose

its triple-A ratings later in the life of the bonds, it cannot reasonably have believed that the

possibility was nonexistent).

## IV.     FRAUDULENT INDUCEMENT and FRAUDULENT CONCEALMENT

In Count II of the complaint, plaintiff alleges:

> Prior to entering into the Lease, the Landlord had an obligation to disclose to Gander Mountain that the Premises were located in a flood plain and had a history of flooding.
>
> During the due diligence period - particularly from February 19, 2004 through April 9, 2004 as set forth above - the Landlord was asked repeatedly to provide information about the condition of the Premises. Yet, the Landlord remained silent and did not disclose to Gander Mountain any information about the Premises' high risk of flooding or prior flood events affecting the Premises.
>
> Because the Landlord remained silent and did not disclose to Gander Mountain any information about the high risk of flooding and prior flood events at the Premises, the Landlord intended to deceive Gander Mountain and fraudulently induce it into entering the Lease.
>
> Gander Mountain justifiably relied on the Landlord's representation that the Premises could be used as a retail store for the term of the Lease.
>
> The Landlord, as owner of the Premises, possessed unique and specialized expertise and knowledge regarding the Premises and held a special position of confidence and trust with Gander Mountain.
>
> Gander Mountain has filed this Complaint without unreasonable delay, in that it only recently discovered, after the most recent September 2011 flood event, that the Landlord withheld information from it that the Premises had a high pre-2005 risk and history of flooding.

Pltf. Cmplt at 60, 61, 64 - 66, 71.

Similarly, in Count III, plaintiff added:

> Because the Landlord fraudulently concealed from Gander Mountain any information about the high risk of flooding and prior flood events at the Premises, the Landlord intended to deceive Gander Mountain.

*Id.* at 78.

With respect to Count II, plaintiff seeks an order rescinding the Lease due to the Landlord's fraudulent conduct in failing to disclose the Premises' prior flood events and history to Gander Mountain.  With respect to Count III, plaintiff seeks a monetary judgment.  Defendant

argues that Counts II and III of the complaint must be dismissed because the claims are barred by the statute of limitations.  In the alternative, defendant argues that the complaint fails to state a claim for fraud.

**A.      Statute of Limitations**

A claim for rescission based on actual fraud is governed by the statute of limitations for claims based on fraud.  *Certain Underwriters at Lloyd's v. Milberg LLP,* 2009 WL 3241489, at *4 -5  (S.D.N.Y. 2009) (citing *Abbate v. Abbate*, 82 A.D.2d 368 (2d Dep't 1981)). Under N.Y. C.P.L.R. § 213(8), the applicable limitations period is "six years from the commission of the fraud or two years from the time the plaintiff discovered, or could with reasonable diligence have discovered, the fraud, whichever is later."  *Id*.

Under New York law, a plaintiff "could, with due diligence, have discovered" the fraud when provided sufficient facts to place him on "inquiry notice." *Aldrich v. Marsh & McLennan Cos., Inc*., 52 A.D.3d 435, 436, 861 N.Y.S.2d 30 (1st Dep't 2008) (citations omitted).  "A party seeking to avoid the bar of the statute [of limitations] on account of fraud must aver and show that he used due diligence to detect it." *Abercrombie v. Andrew Coll.,* 438 F.Supp.2d 243, 266 (S.D.N.Y. 2006) (citing *Moll v. U.S. Life Title Ins. Co. of N.Y.*, 700 F.Supp. 1288, 1293 (S.D.N.Y. 1988)). "All that is needed to commence the running of the statute is 'knowledge of facts' sufficient 'to suggest to a person of ordinary intelligence the probability that he has been defrauded.' " *Id*. (citing *Renz v. Beeman*, 589 F.2d 735, 751 (2d Cir. 1978)).  While it typically is inappropriate to determine whether a plaintiff established that the action was brought within a reasonable time on a motion to dismiss, where a plaintiff does not sufficiently allege due diligence in the complaint, mere allegations of the same are insufficient to toll the statute of limitations. *Id*. "General assertions of ignorance and due diligence without more specific

explanation . . . will not satisfy the[ ] pleading requirements." *Philip Morris v. Heinrich*, 1996 WL 363156, at *12 (S.D.N.Y. 1996).

Here, defendant claims that plaintiff was aware of flooding problems in June 2006. Therefore, using the two year statute of limitations, plaintiff's fraud and recision claims are barred.  In the complaint, plaintiff summarily asserts that it, "only recently discovered, after the most recent September 2011 flood event, that the Landlord withheld information".  In the brief in opposition to the motion, plaintiff does not offer any additional facts but vaguely asserts, "Gander Mountain alleges it discovered this fraud after the September 2011 flood event - less than eight months prior to filing this case" and "certainly within two years from discovery of the fraud".

Upon review of the entire complaint, the Court finds that plaintiff's claim is not plausible. The complaint is devoid of any reference to the 2006 flood in the context of the fraud claims.  The 2006 flood event occurred two years after the Lease was executed and five years prior to the September 2011 flood.  Plaintiff does not explain why the 2006 event did not cause plaintiff to "discover" Pathmark's alleged fraud or what steps, if any, plaintiff took to investigate the issue. From the facts, as alleged in the complaint, the delay in discovering Pathmark's alleged fraud may have been the result of plaintiff's ignorance with respect to the prior flood events, specifically the 2006 flood.  *See New York Teamsters Conference Pension and Ret. Fund v. Hoh*, 554 F.Supp. 519, 526 (D.C.N.Y. 1982) (the plaintiff failed to allege that its ignorance of the facts resulted from any fraudulent concealment by PepsiCo.).   Plaintiff has not set forth any facts in connection with the 2011 flood that were not or could not have been revealed after the 2006 flood.  *See Lighthouse Fin. Group v. Royal Bank of Scotland Group, PLC*, 2012 WL 4616958, at *13 (S.D.N.Y. 2012) (the plaintiffs failed to point to any specific information subsequently revealed in connection with a loss that was previously unavailable to them, or could not have

been discovered in the course of a reasonable investigation).  Plaintiff has not properly plead facts explaining why they failed to inquire about flood issues after the June 2006 flood.  While plaintiff alleges that it was able to conclude, in September 2011, that Pathmark withheld information, plaintiff has failed to allege any facts with respect to what was discovered at that time and specifically, how they discovered Pathmark's alleged wrongdoing such that despite due diligence, plaintiff could not have reasonably learned this information before the statute of limitations ran.  *See Masters v. Wilhelmina Model Agency, Inc*., 2003 WL 1990262, at * (S.D.N.Y. 2003) (the plaintiffs failed to allege with adequate particularity the facts that were discovered during counsel's investigation and the inquiry performed to obtain those facts to show that the plaintiffs could not have been on notice of their causes of action before the statute of limitations period ran).  As early as June 2006, plaintiff possessed  "timely knowledge sufficient to place [it] under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations".  *See Abercrombie*, 483 F.Supp.2d at 266.   Accordingly, plaintiff's second and third cause of action are dismissed as untimely.

**B.     Failure to State a Claim**

In the alternative, defendant argues that Counts II and III should be dismissed for failure to state a claim.  Specifically, defendant alleges that Pathmark, as the landlord, was not obligated to volunteer any information to plaintiff concerning the property.  Moreover, defendant argues that plaintiff cannot establish a *prima facie* case against Islip based upon lack of intent or successor liability theory.  Plaintiff claims that Pathmark possessed superior knowledge and thus a duty to disclose.

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud: "In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b).  The Second Circuit has explained that, in order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted).

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). However, because the court "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations,' . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc*., 47 F.3d 47, 52 (2d Cir.1995) (internal citation omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir.1994) (citations omitted).

To prove fraudulent inducement,"a plaintiff must allege that: (1) the defendant made a material, false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc*., 98 F.3d 13, 19 (2d Cir. 1996) (citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)).  On a claim for fraudulent concealment, plaintiffs must establish the elements of fraudulent misrepresentation, i.e., that the fraud is extraneous to the contract, but are also required to set forth that the defendant had a duty to disclose material

information.  *Swersky v. Dreyer and Traub*, 219 A.D.2d 321, 326 (1996); *see also P.T. Bank Cent. Asia, New York Branch v. ABN AMRO Bank, N.V.*, 301 A.D.2d 373 (1st Dep't 2003).

Where a plaintiff pleads both a fraud claim and a breach of contract claim, the plaintiff must distinguish the two by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages. *See Bridgestone/Firestone*, 98 F.3d at 20.

### 1.    Duty

A claim for fraudulent inducement requires the plaintiff to allege that the defendant first had a duty to disclose material information. *Khindri v. Getty Petroleum Mktg, Inc*., 2011 WL 4904403, at *3 (N.Y.Sup. 2011) (citing *E.B. v. Liberation Publ'ns, Inc*., 7 AD3d 566 (2d Dep't 2004)).  In business transactions, a party is ordinarily under no duty to disclose material facts unless: (1) there is a fiduciary relationship between the parties; or (2) one party has superior knowledge that is not readily available/accessible to the other party and that party knows the other party is acting on the basis of mistaken knowledge. *Stevenson Equip., Inc. v. Chemig Constr. Corp*., 170 A.D.2d 769, 771 (3d Dep't), *aff'd*., 79 N.Y.2d 989 (1992); *see also Jana L. v. West 129th Street Realty Corp*., 22 A.D.3d 274, 277 (1st Dep't 2005) (citations omitted) ("It is well established that, absent a fiduciary relationship between the parties, a duty to disclose arises only under the 'special facts' doctrine where 'one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair'").  To establish "superior knowledge", plaintiff must prove that the material fact was information peculiarly within the knowledge of the defendant, and that the information was not such that could have been discovered by the plaintiff

through the " exercise of ordinary intelligence". *Jana L,* 22 A.D.3d at 277 (citations omitted).  A purchaser cannot rely upon conscious ignorance, for example, limited knowledge of a discoverable condition, as a basis for recovery under this theory. *Id.* (citing *Vandorvort v. Higgenbotham*, 222 A.D.2d 831 (3d Dep't 1995)).   Where there is no fiduciary relationship that would impose a duty to disclose, a party's mere silence without some act which deceived the other party cannot constitute a concealment that is actionable as fraud. *Mobil Oil Corp. v. Joshi*, 202 A.D.2d 318 (1st Dep't 1994).

Here, plaintiff and Pathmark did not have a fiduciary or confidential relationship. Rather, they are sophisticated parties to an arm's length transaction. Based upon the remaining allegations in the complaint, plaintiff has failed to sufficiently plead that Pathmark had superior knowledge that would give rise to any duty to disclose.  Plaintiff summarily argues that Pathmark had "superior knowledge," and impeded plaintiff's ability to conduct its own due diligence but does not allege that Pathmark persuaded plaintiff to refrain from conducting due diligence. *Interallianz Bank AG v. Nycal Corp*., 1995 WL 406112, at \*5 (S.D.N.Y. 1995) (Because Nycal fails to allege a basis on which to impose a non-contractual duty to disclose on IBZ, all counterclaims that presume the existence of such a duty must fail).  Plaintiff alleges that Pathmark, "possessed unique or specialized expertise and knowledge regarding the Premises and held a position of confidence and trust with Gander Mountain."  However, plaintiff does not allege that it was required to place its trust and reliance on Pathmark. *See Scott v. Durham,* 2011 WL 8969, at \*4 (N.D.Ind. 2011).  While plaintiff claims that Pathmark did not cooperate with CES, the complaint does not allege that Pathmark agreed to assist CES with it's questionnaire and if so, when and how such a promise was made. *See Clifford v. Hughson*, 992 F.Supp. 661, 670 -671 (S.D.N.Y. 1998) ("[a]lthough all contracts include an implied covenant of good faith, a

breach of contract, even if committed in bad faith, does not necessarily involve an intent to defraud"). Similarly, plaintiff does not allege any facts with respect to what information Pathmark had that was not available to plaintiff, i.e., the prior flood events. *See Villa Marin Chevrolet, Inc. v. Gen. Motors Corp*., 1999 WL 1052494, at *7 (E.D.N.Y. 1999) (the plaintiff could have easily determined whether a certificate of occupancy—a public record—had been issued and thus, the landlord did not have superior knowledge of information that was not available to the plaintiff).

Plaintiff does not cite to any caselaw that would permit an inference that the plaintiff had the right to rely upon and trust Pathmark. Plaintiff cites to the *Young v. Keith,* 112 A.D.2d 625 (3d Dep't 1985). However, the *Young* case is factually dissimilar. In that case, the purchaser of a mobile home park commenced a cause of action for fraud against the seller due to seller's failure to disclose deficiencies in the water and sewer systems. On a motion to dismiss, the Court stated that since the park was sold as an operating business and, "the sewer and water systems' deficiencies were known by defendants to require very expensive reconstruction and to pose a threat to the business' operating license", there was a duty to disclose. Moreover, the Court held:

> Plaintiff's complaint can be further read to allege that they could not
> have discovered the deficiencies through an ordinary inspection and
> that they would not have purchased the property had they known of
> them.

*Young*, 112 A.D.2d at 627. Here, plaintiff was aware, before signing the Lease, that Pathmark did not respond to CES' inquiries. Despite that fact, plaintiff executed the Lease.

Plaintiff's reliance on *Magnaleasing, Inc. v. Staten Isl. Mall,* 428 F.Supp. 1039 (S.D.N.Y. 1977) is similarly misplaced. In that case, the plaintiff leased space in a mall and alleged that the decision was based upon the defendant's representations regarding the volume and rate of leasing. On the defendant's motion to dismiss, the Court held that the defendant had "superior

23

knowledge" and expressed an opinion that implied that the defendant knew the facts which supported that opinion.  *Id*. at 1043.  Conversely, in the matter at hand, defendant did not express any opinion to plaintiff that plaintiff claims that it relied upon when the Lease was signed.[6]

Even assuming the causes of action were timely, based upon the allegations set forth in the complaint, Counts II and III are dismissed for failure to state a claim.

## V.    NEGLIGENT OMISSION and NEGLIGENT MISREPRESENTATION

In Count IV entitled "Negligent Omission", plaintiff claims that Pathmark had an obligation to disclose the history of flooding.  Plaintiff seeks injunctive relief terminating the lease and preventing defendant from enforcing the Lease terms against plaintiff.  In Count VI, entitled "Negligent Misrepresentation", plaintiff alleges that Gander Mountain misrepresented that the Premises could be used as a retail store.  As to both Counts IV and VI, plaintiff seeks an award of monetary damages.

Defendant contends that the negligence claims involve omissions and representations made at the time the Lease was executed and thus, the applicable statute of limitations tolled on April 16, 2010.  Conversely, plaintiff claims that the causes of actions have different bases for accrual.

## A.    Negligent Misrepresentation

### 1.    Statute of Limitations

---

[6] Even assuming plaintiff could establish that Pathmark had superior knowledge, defendant argues that plaintiff cannot establish that Islip possessed the request intent under a successor liability theory.  Generally, a corporation that purchases the assets of another corporation is not liable for the seller's torts.  *Ortiz v. Green Bull, Inc*., 2011 WL 5554522, at *5 (E.D.N.Y. 2011) (citing *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244–45 (1983)).  However, New York law recognizes four common-law exceptions to the rule that an asset purchaser is not responsible for the seller's liabilities, applying to: "(1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto merged with a seller; and (4) a buyer that is a mere continuation of a seller."  *Id*. (citing *Cargo Partner AG v. Albatrans, Inc*., 352 F.3d 41, 45 (2d Cir. 2003)).  At this juncture, the record lacks the necessary information to engage in an analysis of this theory.

Plaintiff argues that this cause of action accrued at the time of injury, September 2011. The parties agree that the negligent misrepresentation claim arises out of the same transaction and occurrence that underlie the fraud claim. Accordingly, the appropriate limitation period is six years. *See Calcutti v. SBU, Inc*., 224 F.Supp.2d 691, 701 -702 (S.D.N.Y. 2002) (citations omitted). The statute of limitations for negligent misrepresentation starts on the date of the alleged misrepresentation. *Id*. (citing *Fandy v. Lung-Fong Chen*, 262 A.D.2d 352 (2d Dep't 1999)); *see also Reilly Green Mountain Platform Tennis v. Cortese,* 2007 WL 7263362, at *12 (N.Y.Sup. 2007) (the cause of action accrues when the plaintiffs acted on the alleged representations by purchasing the paint in question); *see also Marchig v. Christie's Inc*., 430 F. App'x 22 (2d Cir. 2011) (cause of action accrued when auction house sold consignor's pen-and-ink drawing that was mistakenly attributed to unknown nineteenth century artist when in fact it was done by Leonardo da Vinci at small fraction of its actual value). Accordingly, in this matter, plaintiff's cause of action for negligent misrepresentation accrued on the date that the Lease was executed, April 2004. As such, Count IV is time barred.

### 2.     Failure to State a Claim

In the alternative, defendant argues that plaintiff has failed to state a claim for negligent misrepresentation because defendant owed no duty to plaintiff. Moreover, defendant argues that even assuming a duty existed, the breach of that duty was not the proximate cause of plaintiff's harm. Plaintiff argues that it has adequately plead a cause of action for negligence because plaintiff repeatedly asked the Landlord for information and the Landlord failed to provide highly relevant information. Moreover, as for proximate cause, plaintiff claims it would not have entered into the Lease if the Landlord disclosed material information.

The elements of a cause of action for negligent misrepresentation are: (1) awareness by the maker of a statement that the statement is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance.   *M & T Bank Corp. v. LaSalle Bank Nat. Ass'n,* 852 F.Supp.2d 324, 336 (W.D.N.Y. 2012) (citing *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551 (1985)).  A plaintiff may recover for negligent misrepresentation, "only where there is a special relationship of trust or confidence, which creates a duty for one party to impart correct information to another . . . [t]he special relationship requires a closer degree of trust than that in an ordinary business relationship." *Id*. (citing *inter alia Wright v. Selle*, 27 A.D.3d 1065, 1066–67 (4th Dept 2006). A business relationship can give rise to a special relationship where "the requisite high degree of dominance and reliance existed prior to the transaction giving rise to the alleged wrong, and not as a result of it". *Id*. (citations omitted).

In this case, plaintiff has not alleged any special relationship with defendant or Pathmark beyond an ordinary business relationship.  The parties are sophisticated business entities that engaged in an arm's-length transaction.  Plaintiff has not alleged any "measurable disparity of influence".  *Rared Manchester NH, LLC v. Rite Aid of New Hampshire, Inc*., 693 F.3d 48, 56 (1st Cir. 2012) (rejecting the plaintiff's request that the Court find that the term "special relationship" is expansive enough to include close business relationships as well as fiduciary and confidential relationships).  Thus, even assuming the negligent misrepresentation claim was timely, plaintiff has failed to allege a viable cause of action.

**B.      Negligent Omission**

Plaintiff argues that the negligent omission claim is based upon Pathmark's failure to disclose the site's past flood history and therefore, the cause of action accrued after September 2011, when plaintiff discovered facts indicating that the information was hidden.  In support of this claim, plaintiff argues that the two year discovery rule tolls the limitations period because plaintiff has established that the "wrong is self-concealing".  *See* Dkt. No. 19, P. 21.  In addition, plaintiff alleges that it has sufficiently plead "self concealment" because "only the Landlord was in a position to know about past flood history" and concealed it.

The Court has reviewed the case cited by plaintiff in support of Count IV and finds the facts and holdings inapplicable to the case herein.  In *S.E.C. v. Jones*, 476 F.Supp.2d 374 (S.D.N.Y. 2007) and *S.E.C. v. Gabelli*, 653 F.3d 49 (2d Cir. 2011), the courts discussed "self concealment" in relation to plaintiff's fraudulent concealment claims.  Moreover, in support of the negligent omission cause of action, plaintiff relies upon the same contentions presented in support of the fraudulent concealment claim.  *See* Dkt. No. 19, p. 21.  Regardless of whether this claim is styled as a fraudulent concealment or a negligent omission, it is subject to the heightened pleading standards of Rule 9(b).  *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp.2d 162, 201 (S.D.N.Y. 2011).  In Part IV *supra*, the Court discussed and dismissed plaintiff's fraudulent concealment claims.  Based upon the same analysis, plaintiff's negligent omission claim is also dismissed.

## VI.    BREACH OF CONTRACT

Under New York law, causes of action for breach of contract are subject to a six-year statute of limitations. C.P.L.R. § 213(2).  A breach of contract cause of action accrues at the time of the breach, even if no damage occurs until later. *Ely–Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402–03 (1993) (refusing to postpone running of statute of limitations

for contract action where plaintiff was allegedly unaware of the breach at the time it occurred).

Defendant argues that Count V of the complaint must be dismissed because it is barred by the statute of limitations.  Specifically, defendant argues that the action accrued on the date that the Lease was executed.  Plaintiff argues that the Lease provides that the premises, "be used" as a hunting, fishing, and camping store and that this is a continuing representation. Plaintiff claims the consequences of the September 2011 flood give rise to the breach of contract claim and further assert that the action accrued in May 2012 when insurers refused to provide all-risk coverage.  Moreover, plaintiff claims that even if the accrual date was the June 2006 food, that flood occurred less than six years before the complaint was filed.  Therefore, plaintiff argues that under either theory, the action is timely.  Plaintiff has failed to relevant cite to any caselaw in support of it's position.

Plaintiff's arguments lack merit. The representation as to the terms of plaintiff's tenancy status was false when made.  *Lana & Edward's Realty Corp. v. Katz/Weinstein P'ship*, 2010 WL 963564, at *3 -5  (N.Y.Sup. 2010). "[I]nasmuch as plaintiff had a remedy at the time of the execution of the contract, this is when plaintiff's breach of contract claim accrued".  *Id*. (citing *W. 90th Owners Corp. v. Schlechter*, 137 A.D.2d 456, 458 (1988)). Here, the statute of limitations on plaintiff's breach of contract cause of action against defendant began to run when the Lease was executed on April 16, 2004.  Therefore, the six-year statute of limitations on this cause of action expired on April 16, 2010.  *See Lazzarino v. Warner Bros. Entm't, Inc*., 2006 WL 3069276, at *8 -9  (N.Y.Sup. 2006).

## VI.     FAILURE TO JOIN AN INDISPENSABLE PARTY

As the Court has granted defendant's motion to dismiss plaintiff's complaint in its entirety, plaintiff's alternate request for relief pursuant to Fed. R. Civ. P. 12(b)(7) is moot.

**CONCLUSION**

Based upon the foregoing, it is

**ORDERED**, that defendant's motion for dismissal of plaintiff's complaint pursuant to

Fed. R. Civ. P. 12(b)(6) (Dkt. No. 14) is **GRANTED** for the reasons set forth above.

The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated:  February 11, 2013
       Albany, New York

**Mae A. D'Agostino**
**U.S. District Judge**